UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA TIMOFEEVA, | No. 2:14-cv-2560 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on July 27, 2011. Administrative Record ("AR") 120-29 (Exh. 1D).[2] The disability onset date was alleged to be January 1, 2010 (AR 120), but was later amended to July 27, 2011. AR 11. The applications were disapproved initially, AR 40-51 (Exh. 1A), 52 (Exh. 2A), and on reconsideration, AR 53-64 (Exh. 3A), AR 65 (Exh. 4A). On October 30, 2012, ALJ David M. Blume presided over the hearing on plaintiff's challenge to the disapprovals. AR 25-39 (transcript). Plaintiff was present and testified at the hearing. AR 28-36. She was represented by attorney Svetlana Kumansky at the hearing. AR 25. James M. Graham, a vocational expert, also testified at the hearing. AR 36-39.

On January 18, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 11-20 (decision), 21-24 (exhibits). On September 18, 2014, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4 (decision).

Plaintiff filed this action on November 2, 2014. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 12, 22. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 20 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

Plaintiff was born on April 1, 1972, and accordingly was 39 years old when she filed her application. AR 19. Plaintiff has a high school education, but has a "minimal ability to communicate in English." AR 14, 19.[3]

////

---

[2] The AR is electronically filed at ECF Nos. 13-3 to 13-11(AR 1 to AR 426).
[3] The ALJ found that plaintiff "is able to communicate in English." AR 19. However, he seems to have fine-tuned this by finding that her ability to communicate in English is "minimal" (AR 14), and further, he limited plaintiff to jobs involving "only minimum English communication." AR 17.

2

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error,

which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

4

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since July 27, 2011, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe impairments: depression and schizoaffective disorder (20 CFR 416.920(c)).
>
> 3. [Step 3] 3. At no time relevant did claimant have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant is limited to nonpublic simple repetitive tasks. She is limited to only occasional interaction with coworkers and supervisors, with minimal ability to communicate in English.
>
> 5. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born on April 1, 1972 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. [Step 5, continued] Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).

>   10. The claimant has not been under a disability, as defined in the Social Security Act, since July 27, 2011, the date the application was filed (20 CFR 416.920(g)).

AR 13-20.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 20.

## VI.  ANALYSIS

When the plaintiff claims a mental impairment, the regulations require that those reviewing the application – here, the state agency personnel – follow a special psychiatric review technique ("PRTF"). The review determines whether plaintiff meets or equals an impairment in the Listings, and if not, determines the plaintiff's mental residual functional capacity ("MRFC"). See 20 C.F.R. § 416.920a. This procedure was followed here. See AR 46 (Exh. 1A) (psychiatric review technique (PRT) on initial consideration), 47-49 (mental residual functional capacity assessment (MRFC) on initial consideration), 59-60 (Exh. 3A) (PRT, on reconsideration), 61-62 (MRFC on reconsideration); see also, AR 18 (ALJ referring to Exhs. 1A and 3A).

The ALJ, in turn, "must 'document application of the technique in [his] decision.'" Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011) (quoting 20 C.F.R. § 416.920a(e)). The ALJ's decision "*must* include a specific finding as to the degree of limitation in each of the functional areas . . .." Id. (emphasis in text) (quoting 20 C.F.R. § 416.920a(e)(4)). The functional areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3) (citing 12.00C of the Listings). Thus, "the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a 'narrative rationale,' instead of the 'checklist of . . . conclusions' found in a PRTF." Id. (quoting 65 Fed. Reg. at 50,757-58). Moreover, as plaintiff asserts, "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, 1996 SSR LEXIS 5 (S.S.A. July 2, 1996) ("Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims").

Plaintiff makes the following arguments in urging reversal of the ALJ's decision: (1) the ALJ should have found that plaintiff met or equaled Listings ¶ 12.04 (ECF No. 17 at 9 n.7); (2) the ALJ did not properly explain his Mental Residual Functional Capacity assessment ("MRFC") (ECF No. 17 at 7-9); (3) the non-examining mental health professionals do not adequately explain their opinions (ECF No. 17 at 9-10); and (4) the treating and examining sources do not need to explain their opinions, and the ALJ should not have discounted them (ECF No. 17 at 10-12).

A. Listings ¶ 12.04

The ALJ found that plaintiff's mental impairments did not meet or equal any of the Listings. AR 14. He found that despite plaintiff's severe depression and schizoaffective disorder, plaintiff did not experience "marked" limitations in any of the functional areas. AR 13, 14. Plaintiff argues that she meets or equals Listings ¶ 12.04, for "Affective Disorders." Specifically, she argues that the ALJ erred in finding that she did not experience marked limitations in (1) activities of daily living, and (2) concentration, persistence and pace.[4]

1. Activities of daily living

> Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.

Listings ¶ 12.00C(1). The ALJ found that plaintiff had only "mild" restrictions in her activities of daily living. AR 14. Plaintiff argues that this is error because the testimony of plaintiff and her sister made clear that plaintiff had "marked" restrictions in that functional area. ECF No. 17 at 9 n.7, 12. The record shows that the ALJ did not err in finding "mild" restrictions, although he did overstate the case for that conclusion.

Plaintiff's self-assessment and the third-party assessment of her sister (AR 151-58

---

[4] Plaintiff would meet or equal Listings ¶ 12.04 if she experienced (1) "marked" limitations in two of the functional categories listed there, or (2) "marked" limitations in one of the categories listed there, plus repeated episodes of decompensation (each of extended duration). See Listings ¶ 12.04B.

(Exh. 3E), 177-84 (Exh. 5E))[5] state that plaintiff's husband "cooks and takes care of our children," that plaintiff "need[s] help" and "reminders" with every listed aspect of "Personal Care," that she does not prepare her own meals, and that she cannot go out alone.

The ALJ discredited this testimony, having found that "the information provided by the claimant generally may not be entirely reliable." AR 18. Specifically, the ALJ found that plaintiff "provided inconsistent information regarding daily activities." Id. He noted that plaintiff testified that she could only stand for 20 minutes at a time (AR 35), whereas the record reflected that she "was exercising twice a day on the treadmill for at least 45 minutes each time." AR 18 (citing Exh. 7F). Plaintiff does not address the discrepancy. Even if the discrepancy may seem minor, "[c]redibility determinations are the province of the ALJ." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Here, the ALJ provided "specific, cogent reasons" for not crediting the testimony of plaintiff or her sister. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).[6]

---

[5] Plaintiff's self-assessment was filled out by plaintiff's sister and translator, Vera Vorobyova. AR 158. The sister's third-party assessment is nearly identical to plaintiff's self-assessment. AR 177-84.

[6] In addition, plaintiff testified that when she is "sick," she cannot sleep or "do anything." AR 152-54 (self-assessment). Plaintiff testified at the hearing that she gets "sick" every two weeks for at least "four or five days." AR 32, 33. This occurs because she gets medication for her psychosis once every two weeks, but the effects wear off after one and one-half weeks. Id. Plaintiff's testimony is at least partially confirmed by her May 17, 2012 visit with Dr. McDaniel, in which the doctor noted in his "Assessment" that plaintiff "is also distressed by her insomnia which occurs *regularly 4 days prior to her next injection*." AR 338 (emphasis added).

However, at the Salud clinic, where plaintiff was treated for her diabetes, she reported that she exercised *every day*. Exh. 7F: AR 369 (August 21, 2012, "Walking every day, 30 min."), 376 (May 14, 2012, "Exercises at home twice a day 45 min. each, has treadmill"), 383 (February 7, 2012, "She reports that she is feeling well and that she is doing aerobic exercise for one hour every day"). In addition, plaintiff testified at the hearing that she walks her children to and from school, and did not indicate that there were any days that she was unable to do this. AR 32.

To be clear, these daily activities are not cited as direct proof that plaintiff is not disabled. It is well established that a claimant's ability to engage in *some* daily activities, or to exercise occasionally or to try to improve her condition is not proof that she is not disabled. See, e.g., Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[a] claimant need not be completely incapacitated to receive benefits"). However, the evidence of plaintiff's contradictory testimony, and her testimony that she engages in these activities *every day* is additional evidentiary support (continued…)

It is, of course, plaintiff's burden to establish the severity of her impairments. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) ("[a] claimant bears the burden of proving that an impairment is disabling"). Here, plaintiff cites to no other evidence in the record in support of her assertion that she has a "marked" limitation in activities of daily living, and the ALJ did not credit the only evidence she did present. Accordingly, the ALJ was entitled to find that plaintiff had only a "mild" limitation in her activities of daily living.

The ALJ did overstate plaintiff's abilities in this functional area by finding that plaintiff "is able to handle her personal care, take her children to and from school, cook, and transport herself to her various life events, such as doctor appointments, etc." AR 14. The ALJ does not cite to any exhibit, testimony, or other part of the record in support of this finding, and in fact, there is support in the record for only one of these activities – plaintiff testified that she walks her children to and from school. AR 32. However, given that plaintiff bears the burden of producing evidence of severity, and failed to produce any evidence other than the properly discredited testimony, the ALJ's error was harmless.[7]

### 2. Concentration, persistence and pace

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listings ¶ 12.00C(3). The ALJ found that plaintiff was only "moderately" impaired in this functional area. AR 14. Plaintiff argues that "[o]nce the treating sources are credited as true," plaintiff's "concentration, persistence and pace can be found to be markedly impaired." ECF No. 17 at 9 n.7. Plaintiff does not identify which "treating sources" he was referring to, but Dr. Kanchananakhin is the only treating source that directly addresses concentration, persistence and pace.[8] In fact, the ALJ does cite Dr. Kanchananakhin's opinion

---

for the ALJ's finding that plaintiff was not credible, since she testified that there are 4-5 days in every biweekly cycle when she can do nothing at all.

[7] The court notes that the state agency physicians also rated plaintiff with only "mild" restrictions in this area. AR 46 (Dr. Loomis), 59 (Ochitill). As discussed below, the ALJ properly gave significant weight to those opinions.

[8] The ALJ did cite the opinion of the examining physician, Dr. Hicks (even though he gave "little weight" to Dr. Hicks's view that plaintiff could not sustain work activities), for the finding that (continued…)

9

1  (even though he also gave "little weight" to this doctor's conclusion that plaintiff was "unable to
2  work"), for his finding that plaintiff "has a fair ability to follow work instructions." Id. (citing
3  Exh. 8F).

4  This citation to Dr. Kanchananakhin is difficult to understand however, because not only
5  did the ALJ give it "little weight," but the ALJ seems to have cherry-picked the opinion. It is true
6  that this opinion finds plaintiff has a "fair" ability to follow work rules, relate to co-workers, use
7  judgment, interact with supervisors, and understand, remember and carry out simple job
8  instructions. AR 386-87. The check-off form defines "fair" to mean "Ability in this area is
9  limited to satisfactory." However, in the area most relevant to this functional area, namely the
10 ability to maintain attention and concentration, Dr. Kanchananakhin rated plaintiff as "poor."
11 AR 387 ¶ I(9). The check-off form defines "poor" as "Ability to function in this area is seriously
12 limited, but not precluded." AR 386. Thus, the rating appears to correspond to "marked," which
13 is defined as "more than moderate but less than extreme." Listings ¶ 12.00C.

14 Regardless of whether the ALJ erred in his assessment of this functional area, it was
15 harmless, since (1) even if plaintiff has a "marked" restriction in this functional area, she still
16 does not meet the Listings because she has no other "marked" restrictions or episodes of
17 decompensation, and (2) the ALJ was entitled to, as he did, give this opinion "little" weight, as
18 discussed below, since it was entirely conclusory and was not supported by any evidence in the
19 record.

20    B. Mental Residual Functional Capacity Assessment ("MRFC")

21 "Residual Functional Capacity (RFC) is the work that an individual is capable of
22 performing in spite of her limitations." Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 928 (9th
23 Cir. 2014) (citing 20 C.F.R. § 416.945(a)(1)). There being physical and mental limitations, the
24 work plaintiff can do despite her mental limitations is her mental RFC ("MRFC").

25 Plaintiff argues that the ALJ failed to provide the required narrative in determining

---

27 plaintiff "would [have] difficulty with persistence and pace due to her postpartum depression."
   Id. (citing Exh. 1F). However, Dr. Hicks's report contains nothing under "Attention /
28 Concentration" that would indicate anything amiss.

10

1  plaintiff's MRFC.  However, as discussed below, the ALJ adequately explained his MRFC.  In

2  making the MRFC determination, the ALJ gave "significant weight" to the state agency physician

3  opinions (Exhs. 1A, 3A), did not credit plaintiff's testimony or that of her sister (as discussed

4  above), and gave little weight to the opinions of Drs. Hicks (Exh. 1F) and Kanchananakhin

5  (Exh. 8F).[9]

### 1. Non-examining Doctors

The ALJ gave "significant weight" to the opinions of the state agency physicians, K. Loomis, M.D. (Exh. 1A), and Herbert Ochitill, M.D. (Exh. 3A), both of whom were non-examining physicians.  AR 18.  The ALJ explained that their opinions were "consistent with the overall record."  Id.

A nonexamining physician's function is to read medical evidence in a claimant's case records, decide whether or not the claimant's impairments meet or equal the Listings, and determine the claimant's Residual Functional Capacities.  20 C.F.R. § 416.927(e)(1)(i), (e)(2)(i) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings and other opinions of State agency medical . . . consultants . . . as opinion evidence").  "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'"  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

On the initial consideration, Dr. Loomis set out the medical evidence of record being considered, set forth plaintiff's subjective complaints and the objective findings ("Findings of Fact and Analysis of Evidence," or "FOFAE"), considered the contrary opinion of the examining physician, Richard Hicks, M.D. (see below), explained why he disagreed with Dr. Hicks,

---

[9] The ALJ also gave "great weight" to the opinion of the "consultative internal examiner," Sanford Selcon, M.D. (QTC Medical Group, Inc.-SC).  AR 18 (citing Exhibit 4F).  Dr. Selcon conducted an "internal medicine evaluation" of plaintiff on September 8, 2011.  AR 324-28 (Exh. 4F).  Plaintiff does not seem to challenge the ALJ's consideration of this decision, as it relates only to her claimed physical impairments.  Plaintiff does note, in passing, that she "probably should have been found to have severe obesity," but then abandons that observation with the statement that "[t]his case involves mental impairment," and makes no further mention of her physical impairments.  ECF No. 17 at 2.

11

explained his credibility determinations, and gave his conclusions about plaintiff's MRFC which, he stated, are based upon the FOFAE. AR 41-51 (Exh. 1A). In explaining why he disagreed with Dr. Hicks's September 1, 2011 opinion, Dr. Loomis explained that the opinion "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." AR 49. Thus, plaintiff's argument that the opinion contains "no explanation other than agreement with the analyst's summary" is belied by the opinion itself.

On the merits, Dr. Loomis concluded that plaintiff had no "marked" limitations in any area, and that her limitations were such that she should could only do simple/unskilled tasks, and would have difficulty dealing with the general public. AR 45. On reconsideration, Dr. Ochitill similarly reviewed the medical evidence of record (although not as thoroughly as Dr. Loomis), considered the additional evidence plaintiff submitted showing plaintiff to be "stable," and concluded that the initial determination should be affirmed. AR 58.

The ALJ thus explained his reliance on these opinions, and was entitled to give them "significant weight."[10]

### 2. Richard Hicks, M.D., Examining Physician

The ALJ gave "little weight" to the opinion of Richard Hicks, M.D. AR 18. Dr. Hicks completed a "comprehensive psychiatric evaluation" of plaintiff on September 1, 2011. AR 216-19 (Exh. 1F). The ALJ explained that even though Dr. Hicks "noted that claimant's attention and concentration were unremarkable," he nevertheless "opined that she would have difficulty with consistency and being regular." AR 18. The ALJ further explained that that Dr. Hicks's "overall opinion on the claimant's function is inconsistent with subsequent treatment notes."

In taking plaintiff's history, Dr. Hicks notes that plaintiff "has been depressed with a postpartum type of depression," but that her twice-monthly Risperdal injections "are helping her."

---

[10] Indeed, the ALJ went further than these opinions, and additionally restricted plaintiff to limited contact with coworkers and supervisors, even though Dr. Loomis found that she could interact adequately with coworkers and supervisors. The ALJ further limited plaintiff to jobs with minimal English communication.

12

1    AR 216, 217.  In opining on plaintiff's mental status, Dr. Hicks gives an evaluation that is, as the

2    ALJ described it, "unremarkable," in "Attention/Concentration," and in nearly every other

3    category.  AR 217-18.  Only in his description of plaintiff's "Mood," is anything noted to be other

4    than completely normal.  AR 217.[11]

5          Yet, in giving his "Functional Assessment / Medical Source Statement," Dr. Hicks states

6    that plaintiff "would have difficulty being consistent and regular."  AR 219.  He also asserts that

7    plaintiff would "have difficulty doing simple jobs," "difficulty interacting with coworkers and the

8    public," and that she could "not manage her own funds."  AR 218-19.  There is nothing in the

9    report preceding these statements that would explain how Dr. Hicks reached any of these

10   conclusions.  Moreover, Dr. Hicks makes no reference to any other records – medical or

11   otherwise – or any other information that could explain or serve as the basis for his conclusions.[12]

12   They are simply asserted after – but not consistently with – his comprehensive evaluation.

13         The ALJ thus explained his consideration of Dr. Hicks's opinion, and was entitled to give

14   this opinion "little weight."

15         The court notes, however, that despite the ALJ's giving this opinion "little weight," he

16   actually incorporated much of it into his decision.  The ALJ's residual functional capacity

17   assessment incorporates three of Dr. Hick's stated work restrictions, namely, that plaintiff "would

18   have difficulty with the language barrier," that "[s]he would have difficulty interacting with

19   coworkers" and that she would have difficulties interacting with "the public."  See AR 218, 219.

20   The ALJ incorporated those limitations by restricting her RFC to "nonpublic" jobs where there

21   was "minimum English communication," and "only occasional interaction with coworkers and

22   supervisors."  AR 17; see also, AR 37 (transcript, regarding jobs proposed by the VE, "Q:  . . .

---

[11] Plaintiff concedes that Dr. Hicks's report showed "no abnormalities other than report of disturbed sleep and the finding of a somewhat depressed mood."  AR 17 at 5.  Specifically, Dr. Hicks states that "[t]he subjective internal emotional tone of the claimant is somewhat depressed, not elevated."  AR 217.

[12] Plaintiff concedes that Dr. Hicks's opinion "may lack explanation " (AR 17 at 5), and that the doctor "asks us to take his opinions on faith" (AR 17 at 11).  Plaintiff also indicates that Dr. Hicks's opinion was the result of "some combination of arrogance and laziness . . . ."  AR 17 at 11.  None of these observations support plaintiff's view that Dr. Hicks's opinion should have been given greater weight.

can a person get by with having very minimal English communication skills?  A: Yes, your honor").

### 3. Keith McDaniel, M.D., Treating Physician

The ALJ gave "little weight" to Dr. McDaniel's opinion.  AR 18.  According to the "Treatment Notes" in the Administrative Record, Dr. McDaniel, of Yolo County Mental Health, saw and treated plaintiff from November 21, 2011 through May 17, 2012.

> To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir.1995).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.  Id.  Also, when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

On March 15, 2012, Dr. McDaniel stated that "I have determined that currently, due to her mental illness, this patient is unable to work."  AR 339.[13]  This opinion therefore conflicts with the opinions of Dr. Loomis and Ochitill, who found that plaintiff did not meet the Listings, and that her limitations were moderate or mild.  See AR 40-49 (Dr. Loomis, Exh. 1A), 53-62 (Ochitill, Exh. 2A).  The ALJ explained that Dr. McDaniel's opinion was "inconsistent with the treatment notes, the objective findings and conservative treatment, and the claimant's daily activities."  AR 17 (citing Exhs. 6F and 7F).  Plaintiff argues that this is "too general to be worthy of credit in a just world," and "boilerplate."  ECF No. 17 at 12.[14]  Further, he argues that

---

[13] Dr. McDaniel made this remark in reporting on an interview he conducted with plaintiff, who had presented with "a new CalWorks form that requires a physician report and signature." AR 339.  Although Dr. McDaniel states that he filled out the CalWorks form "with answers to the various questions regarding her mental state, symptoms, ability to interact with others, etc." (AR 339), that form is not included in the Administrative Record.  Moreover, the "Progress Note" for that day contains no entries for the subjective or objective complaints, medications, assessment, diagnosis, plan or goals that are included in all the other "Progress Notes" completed by Dr. McDaniel following his visits with plaintiff.
[14] Plaintiff's frustration with the ALJ's use of boilerplate is understandable, as it is possible to overuse boilerplate instead of engaging in real analysis.  However, the use of boilerplate in these (continued…)

14

Dr. McDaniel's opinion is "well-supported by a steady stream of mental status exams and chart narratives . . .." ECF No. 17 at 11.

Despite the boilerplate, however, the ALJ identified the "treatment notes" and "objective findings" he was referring to, namely Exhibits 6F and 7F. Dr. McDaniel's treatment notes leading up to his "unable to work" opinion show only that plaintiff was getting "good results in controlling psychotic symptoms," that she had experienced no hallucinations since 2011, that she was "stable," and that the only side-effect she experienced from her medication was feeling a little tired, but not enough to require naps. AR 337-43.

The treatment notes from Yolo County Mental Health that precede Dr. McDaniel's treatment are from Jason Rose, a Physician's Assistant, and Ming Looi, a Nurse Practitioner. Those notes show that plaintiff's psychotic symptoms improved over time from "moderately controlled" to "well controlled" with her medication. AR 345 (Jason Rose, Physician's Assistant, May 20, 2011), 347 (same, April 22, 2011), 349 (same, March 24, 2011), 352 (same, February 20, 2011).[15] The notes also show that plaintiff was treated with medications, and no unusual or extraordinary measures are noted, such as hospitalizations. AR 337-67 (Exh. 6F). Meanwhile, the treatment notes from the Salud Clinic (Exh. 7F), as discussed above, show only that plaintiff was able to engage in exercise every day.

Thus, the ALJ reasonably found that Dr. McDaniel's blanket "unable to work" opinion was inconsistent with his own treatment notes, and those that had preceded him at Yolo County Mental Health. Plaintiff identifies no other basis in the medical or other records for Dr. McDaniel's opinion. The ALJ was therefore entitled to give it "little weight" as a conflicting

---

cases is also understandable given the ALJs' heavy workload, and it is mitigated in this case by the ALJ's citation to specific evidence in the record to support even his boilerplate statements.

[15] If Rose or Looi had expressed opinions, those would have been "other sources" that may be used to show the severity of plaintiff's impairments and how it affects her ability to work. See 20 C.F.R. § 416.913(d)(1). The court notes that Rose inserted the following sentence into his narration of plaintiff's "Subjective" complaints: "Functional Impairment: poor concentration, poor memory, poor social interactions." AR 344, 346, 348, 351. Given the placement of the sentence in plaintiff's subjective complaint section, it does not appear to be Rose's opinion or assessment. The ALJ makes no mention of it, plaintiff in her brief only notes its existence without any explanation of what it is, and the Commissioner does not mention it in her brief. With no explanation for these comments in the record, or in the briefs, the court will not include them in its analysis.

1    opinion that was inconsistent with the treatment notes and evidence in the record.[16]

### 4.  P. Kanchananakhin, M.D., Treating Physician

The ALJ gave "little weight" to the opinion of Dr. Kanchananakhin. AR 17 (citing Exhibit 8F). On October 16, 2012, Dr. Kanchananakhin completed a check-off form in which he rated plaintiff as "fair" or "poor" in the areas identified on the form. AR 386-88 (Exh. 8F). "Poor," according to the form, meant that plaintiff was "seriously limited" in that area. AR 386. The doctor rates plaintiff as "poor" in dealing with the public and work stresses, functioning independently, maintaining attention/concentration, dealing with detailed and/or complex job instructions, and demonstrating reliability. However, the form does not identify any basis for these assessments. There is no discussion of any kind about any visits he may have had with plaintiff, any medical records, or any prescriptions and their effects. See AR 386.

The ALJ explained that this opinion was "inconsistent with the treatment notes, the objective findings and conservative treatment, and the claimant's daily activities." AR 17, again citing Exhs. 6F and 7F. However, it is not clear to the court what the ALJ meant by this. Dr. Kanchananakhin's assessments do not address the issues covered by the medical records cited. Nothing in the cited medical records is facially inconsistent with Dr. Kanchananakhin's assessments. None of the assessments in those records appear to address plaintiff's ability to deal with stressors, concentration, job instructions or reliability. Meanwhile, plaintiff's own self-assessment is consistent with Dr. Kanchananakhin's assessment of her lack of function in the areas of attention and concentration, memory and independence.

However, if the ALJ erred in his stated reasons for giving little weight to this opinion, the error was harmless because the residual functional capacity takes into account the limitations contained in this opinion.[17] "An error is harmless if it is inconsequential to the ultimate nondisability determination . . .." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099

---

[16] In addition, the opinion was "brief, conclusory, and inadequately supported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

[17] The finding of harmlessness is buttressed by the fact that Dr. Kanchananakhin's opinion, even though that of a treating physician, is entirely conclusory, and is not supported by a single reference to any medical record, patient visit, evaluation, or anything else.

(9th Cir. 2014) (internal quotation marks omitted).  Here, even though the ALJ gave little weight to this opinion, his RFC is limited to no interaction with the public, simple and repetitive tasks, and only occasional interaction with coworkers and supervisors.  AR 17.  These limitations are consistent with the opinion, and indeed appear to be the same limitations that would result from giving the opinion great weight.  While plaintiff objects that the ALJ gave this opinion little weight, she does not address the fact that the RFC is consistent with the opinion.

### C. Non-Examining Doctors – Explanations

Plaintiff argues that Drs. Loomis and Ochitill did not adequately explain their opinions.  ECF No. 17 at 9-10.  She argues that Dr. Loomis offered "no explanation other than agreement with the analyst's summary," and that Dr. Ochitill's explanation "doesn't make sense."  Id. at 6.  As discussed above, both doctors adequately explained their opinions.  Dr. Loomis thoroughly reviewed the medical evidence of record and relied upon that review in reaching his conclusions.  Further, he explained why he disagreed with Dr. Hicks's conclusions.  Dr. Ochitill similarly reviewed the additional medical evidence, and explained his views.

### D. Treating and Examining Sources – Explanations Not Needed?

As noted above, plaintiff concedes that the treating physician, Dr. McDaniel, offers "only an ultimate opinion about disability," and that the purported explanation for the opinion is not in the record.  ECF No. 17 at 11.  She further concedes that the opinion of the examining physician, Dr. Hicks, "may lack explanation" (AR 17 at 5), and that the doctor "asks us to take his opinions on faith" (AR 17 at 11).  Plaintiff argues that this is no problem, however, because "[u]nlike decisions and nonexaminers, treating and examining sources do not need to explain their opinions . . . [t]hey get credit simply for their status as such . . .."  ECF No. 17 at 10 (citing "20 C.F.R. § 416.927(c)(1)(2)").

That is not the law.  The cited regulations state "we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you," and "we give more weight to opinions from your treating sources."  20 C.F.R. § 416.927(c)(1), (2).  They do not state that no explanation for the opinions need be given, or that such opinions will be accepted solely because they are offered by a treating or examining physician.  To the contrary,

"[t]he ALJ need not accept the opinion of any physician, *including a treating physician*, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (emphasis added).

### E. Substantial Evidence

This case presents the situation where every one of the treating and examining opinions – Drs. Hicks, McDaniel and Kanchananakhin – are brief, conclusory, and unsupported by clinical findings, and where the plaintiff's testimony (as well as her sister's) was properly rejected as not credible. Plaintiff thus failed to meet her burden to show, with substantial evidence, that she was disabled, and the ALJ's decision can be affirmed on that ground alone.

However, the ALJ did have, and relied upon, the opinions of the non-examining state physicians – Drs. Loomis and Ochitill. Those opinions set out the medical evidence they reviewed, explained their disagreement with Dr. Hicks's opinion, explained Dr. Loomis's credibility determination, and concluded that plaintiff was not disabled. These decisions thus constituted substantial evidence which the ALJ was entitled to rely on in finding plaintiff to be "not disabled."

### VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20), is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: March 9, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE